# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

MOSE PRESCOTT, JR.,      )
                               )
      Plaintiff,         )
                               )
v.                     )        CV423-277
                               )
CHATHAM COUNTY      )
DETENTION CENTER, *et al.*,   )
                               )
      Defendants.     )

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Mose Prescott, Jr. has filed this 42 U.S.C. § 1983 case alleging that his mail is improperly handled by staff at the Chatham County Detention Center. *See* doc. 1 at 5. The Court granted him leave to proceed *in forma pauperis*, doc. 3, and he has returned the required forms, docs. 4 & 5. The Court must, therefore, screen the Complaint pursuant to 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

Prescott's allegations are straightforward, if somewhat terse. He alleges that both his "legal mail" and "personal mail" is improperly handled by unidentified staff at Chatham County Detention Center. *See* doc. 1 at 5. Specifically, he alleges that "legal mail is opened in front of us, a copy is made and we receive the copy[.]" *Id.* The original document is "placed in our property," but inmates "have no idea who sees or reads our legal mail or where it actually goes." *Id.* He also alleges that "personal mail is sent to a contractor and is opened by someone who is unknown to us[ ] and scanned onto a computer . . . ." *Id.* Inmates are not provided with access to original correspondence or provided with information about what is done with the original after it is scanned. *Id.* He seeks $3 million dollars in damages. *Id.* at 6.

## I.    Improper Defendant

Prescott names Chatham County Detention Center as a defendant in this case. *See, e.g.,* doc. 1 at 1. However, as this Court has explained, "the Chatham County Detention Center is not an entity subject to suit." *Meyers v. Chatham Cnty. Det. Ctr.*, 2022 WL 1215640, at *1 (S.D. Ga.

Apr. 25, 2022).  Chatham County Detention Center should, therefore, be **DISMISSED** from this case.

## II.   Legal Mail

Prescott's allegations concerning the treatment of his "legal mail" implicate two potential constitutional issues, his right of access to the courts, and his right to free speech under the First Amendment.  The Eleventh Circuit has held that "the right to send and receive mail exists under the First Amendment," and violations of that right may be vindicated by nominal damages, even "absent any actual injury."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333, 1335 (11th Cir. 2008); *see also Christmas v. Nabors*, 76 F.4th 1320, 1328 (11th Cir. 2023).  A viable access-to-courts claim requires an "actual injury," in the form of evidence that "a nonfrivolous[ ] post-conviction claim or civil rights action," was "impeded."  *Al-Amin*, 511 F.3d at 1332-33.  "[I]n other words, the plaintiff[ ] must demonstrate that [he] had a legitimate claim that [he was] unable to pursue due to the prison's restrictions."  *Bass v. Perrin*, 170 F.3d 1312, 1320 n. 13 (11th Cir. 1999).  Since Prescott does not allege his pursuit of any nonfrivolous case was impeded by the challenged policy, *see* doc. 1 at 5, he does not allege an access-to-courts claim.  The

Court, therefore, considers whether his general right to send and receive mail has been violated.

The Eleventh Circuit has recently emphasized that "[a] simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's properly marked legal mail outside of his presence." *Christmas*, 76 F.4th at 1328 (citation omitted). The principle is widely accepted among the Courts of Appeals. *See, e.g., Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1210 (9th Cir. 2017) ("In addition to the Third and Eleventh Circuits, the Second, Sixth, and Tenth Circuits have recognized that the opening of legal mail outside of a prisoner's presence implicates First Amendment rights." (citations omitted)). *Christmas* also explicitly found that the district court erred in dismissing a claim which, although it "did not allege that [jail staff] opened his mail outside of his presence, [it] did allege that they *could* access his legal mail outside of his presence in the future." *Id.* at 1329.

The First Amendment right recognized in *Al-Amin* and *Christmas* is not as expansive as it might first appear. "Legal mail," as used by the Eleventh Circuit, clearly refers to "attorney mail." *See Al-Amin,* 511 F.3d at 1334 ("Thus, we conclude that Al-Amin has a First Amendment free

speech right *to communicate with his attorneys* by mail . . . ." (emphasis added)). The protections afforded to attorney communications do not extend to all "legal" documents generally. "[U]nder federal law, filings in [an] action, be they court orders or documents filed by [parties], are a matter of public record and are not confidential legal mail."[1] *Zamaro v. Moonga*, 2009 WL 5197851, at *2 (E.D. Cal. Dec. 22, 2009) (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)); *see also Vaughn v. Schoapt*, 2007 WL 3274189, at *1 (W.D. Pa. Nov. 5, 2007) ("Public Records such as Court Orders and Report and Recommendations are not special or legal mail."). The opening, and even inspection, of non-legal mail does not violate the Constitution. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974) ("[F]reedom from censorship [of mail] is not equivalent to freedom from inspection or perusal."); *see also, e.g., Dickerson v. Chatman*, 2008 WL 4155624, at *3 (M.D. Ga. Sept. 5, 2008) ("In light of the fact that a

---

[1] Courts have recognized that, for purposes of an access-to-courts claim, court mail is "legal mail." *See, e.g., Ford v. Coleman*, 2015 WL 3404191, at *6 (M.D. Fla. May 26, 2015) (citing *Taylor v. Sterrett*, 532 F.2d 462, 475-76 (5th Cir. 1976) ("In this perspective, we hold that an inmate's right of access to the courts supports the portion of the district court's order requiring that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate.")). As discussed above, however, access-to-courts claims require allegation of an "actual injury," and, in the absence of any such injury here, whether correspondence from the Court might constitute "legal mail" in that context is irrelevant.

prison has a legitimate security interest in opening and inspecting incoming mail for contraband, plaintiff's allegation that his *incoming* mail was opened and read but not censored does not rise to the level of a constitutional violation." (citing *Thornburgh v. Abbott,* 490 U.S. 410, 413-14 (1989); *Turner v. Safley*, 482 U.S. 78, 91-92 (1987)).  Thus, to state a viable First Amendment claim, a prisoner must allege that the correspondence at issue was properly "legal mail," *i.e.*, correspondence with his or her attorney.

Prescott's allegations concerning the treatment of "personal mail," face even greater obstacles.  As noted above, the inspection of non-legal mail, in the absence of allegations that it is censored based upon its subject matter, does not allege a constitutional violation.  *See, e.g., Dickerson*, 2008 WL 4155624, at *3.  The United States Court of Appeals for the Third Circuit has recently noted that it was unable to identify "any precedent that . . . it violates the First Amendment for [a prison] to use vendors . . . to scan non-privileged mail, send the digital files to the prisons, and destroy they originals." *Rancourt Little Mountain Woodell v. Wetzel*, 2022 WL 17424287, at *2 (3d Cir. Dec. 6, 2022).  The Third Circuit has similarly held that such a policy did not violate the Fourth

Amendment.  *See Robinson v. Pennsylvania Dept. of Corrs.*, 851 F. App'x 289, 293 (3d Cir. 2021).  Some courts have, however, recognized the *possibility* that interference with non-legal mail might violate the Constitution.  *See, e.g., Thompson v. Ferguson*, 2020 WL 7872629, at *10 (E.D. Pa. Dec. 31, 2020) (citing *Thornburgh*, 490 U.S. at 407-08; *Turner*, 482 U.S. at 91-93).  Prescott's allegations are simply too vague to determine whether he even alleges that the third-party scanning policy interferes with his ability to receive mail.  *See* doc. 1 at 5.  Those allegations, therefore, are insufficient to state a claim upon which relief can be granted.

Prescott's allegation concerning the treatment of his legal mail might state a claim, as discussed above, but his conclusory description of the mail at issue as "legal mail" is insufficient.  His allegations concerning the third-party scanning policy applicable to "personal mail" are not sufficient to establish that that policy interferes with his ability to receive mail.  Accordingly, neither discernable substantive claim is sufficient.  Although the Complaint fails to state any claim, Prescott is entitled to an opportunity to amend before the Court recommends dismissal.  *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir.

7

2015) ("Generally, when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action.").

Accordingly, Prescott is **DIRECTED** to submit an Amended Complaint clarifying his allegations of interference with his mail by no later than November 3, 2023. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Prescott is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Prescott is further advised that failure to timely submit his amended complaint may result in a recommendation that this case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

## III. Legal Assistance

Although Prescott is entitled to an opportunity to amend his Complaint, the Court must also address the appearance that he has received some assistance in preparing the original. The factual

8

allegations and damages demand in Prescott's Complaint are identical to several other complaints submitted by inmates at the Chatham County Detention Center. *Compare* doc. 1 at 5-6, *with, e.g., Pollard v. Chatham County Detention Center*, CV423-290, doc. 1 at 7-8 (S.D. Ga. Oct. 2, 2023). The nearly identical presentation of those claims suggests that some inmate, perhaps Prescott himself, is providing legal advice to other prisoners.

The Supreme Court has expressed concern that prisoners who provide informal legal services "are sometimes a menace to prison discipline and . . . their [products] are often so unskillful as to be a burden on the courts which receive them." *Johnson v. Avery*, 393 U.S. 483, 488 (1969). Several justices noted, additionally, that "the disadvantages to prisoner clients of the jailhouse lawyer are unacceptable." *Id.* at 499 (White, J. dissenting). Nevertheless, resort to "jailhouse lawyers" is not grounds for dismissal for abuse of judicial process. *See, e.g., Garcia v. Obasi*, 2021 WL 1877140, at *2 (M.D. Ga. Apr. 28, 2021).

The right to access to the courts "entitles inmates to receive legal assistance from fellow inmates unless prison officials provide reasonable alternative assistance[,]" but "[t]here is . . . no right to be or to receive

legal assistance from a jailhouse lawyer independent of the right of access to the court." *Gassler v. Rayl*, 862 F.2d 706, 707-08 (8th Cir. 1988). Some courts have also required prisoners seeking to rely on such informal assistance to move for leave and show that alternative assistance is not available. *See Ochoa v. Donald*, 2008 WL 4816726, at *2 (M.D. Ga. Oct. 30, 2008) (denying motion for permission to receive assistance from a "jailhouse lawyer" because "Plaintiff has not alleged that the defendant failed to provide him with reasonable alternative assistance or otherwise restricted his access to courts."). This Court has also imposed limits on inmates providing other inmates with legal services. *See Howard v. Kemp*, 2009 WL 1227828, at *6 (S.D. Ga. May 5, 2009) (citing, *inter alia*, S.D. Ga. L. Civ. R. 83.5(c) ("Any person who is not admitted to the bar of this Court . . ., and who exercises in this Court any of the privileges as a member of its bar, or pretends to be entitled to do so, shall be in contempt of this Court and subjected to appropriate punishment.")).

Accordingly, Plaintiff is advised that any assistance provided by other inmates must remain informal. He remains responsible for ensuring that any pleading he submits to this Court is appropriate in both form and content. *Cf.* Fed. R. Civ. P. 11. Finally, Plaintiff is

10

**DIRECTED** that he must include the following language in any future filing:

> I [Plaintiff's Name] declare under penalty of perjury that [name of person who assisted in preparing the document] assisted me in preparing this pleading, written motion, or other paper. I understand that the person identified above is not a lawyer and that, by signing it, I certify to the best of my knowledge, information, or belief, formed after an inquiry reasonable under the circumstances that (1) it is not being presented for any improper purpose; (2) the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law; (3) the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Alternatively, if Plaintiff prepares the filing himself:

> I [Plaintiff's Name] declare under penalty of perjury that I prepared this pleading, written motion, or other paper myself and no other individual assisted me.

Plaintiff is advised that failure to include the language provided above will be construed as failure to comply with a court order and his case may be dismissed. *See* Fed. R. Civ. P. 41(b).

## IV.   Conclusion

In summary, Prescott's Complaint fails to state a claim upon which relief may be granted.  He must submit an Amended Complaint, subject to the requirements explained above, no later than November 3, 2023. Since Defendant Chatham County Detention Center is not an entity subject to suit, it should be **DISMISSED**.   This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Finally, the Court must assess Prescott's filing fee.  *See* 28 U.S.C. § 1915(b).  Plaintiff's prisoner trust fund account statement reflects average monthly deposits of $112.00.  Doc. 5 at 1.  Based upon his furnished information, he owes an initial partial filing fee of $22.40.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the

custodian at his next institution in accordance with the terms of the
payment directive portion of this Order.[2]

**SO ORDERED AND REPORTED AND RECOMMENDED,** this

12th day of October, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian
immediately, as this payment directive is nondispositive within the meaning of Fed.
R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event plaintiff is
transferred to another institution, his present custodian shall forward a copy of this
Order and all financial information concerning payment of the filing fee and costs in
this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected
by the custodian at his next institution in accordance with the terms of the payment
directive portion of this Order.